

FILED

FEB 0 8 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| MICHAEL PITTMAN, | ) |
| | ) |
| Petitioner, | ) Case No. |
| | ) |
| v. | ) |
| | ) 08CV849 |
| ROGER E. WALKER, JR. DIRECTOR, | ) JUDGE DOW |
| ILLINOIS DEPART. OF CORRECTIONS | ) MAGISTRATE JUDGE KEYS |
| RESPONDENT. | ) |
| | ) |
| Respondent. | ) |

### Petition For Writ of Habeas Corpus

Now comes Petitioner, Michael Pittman, pro se, respectfully petition for Writ of

Habeas Corpus, pursuant to 28 U.S.C., Section 2254 or 2244 and moves this court to grant

the Writ of Habeas Corpus. In support of Petition, the Petitioner states as follows.

1. On or before July 5, 2007 Petitioner was release on mandatory supervised

   release. Petitioner discharge date is 2010. This court has jurisdiction over this

   matter.

2. The petitioner has exhausted his available State court remedies.

3. The Petitioner filed a grievance on March 8, 2005. (C27). The Administrative

   Board held a hearing on May 13, 2005. Petitioner grievance was denied on May

23, 2005.

4.  The Petitioner filed Pro Se Complaint for an Order or Mandamus on July 29, 2005, Case No. 05MR92.  The Circuit Court granted Petitioner's Motion for Appointment of Counsel on August 3, 2005.  (C39).  The Director filed his Motion to Dismiss the Complaint on August 30, 2005.  (C50-64).  A hearing was held on December 5, 2005, with The Directors attorneys appearing by telephone and the public defender, who Petitioner appointed attorney, appearing in chambers.  (C2).  He objected to the dismissal.  (C68).  The Circuit Court dismissed Petitioner Complaint.  (C2).

5.  On December 12, 2005, after the dismissal of Petitioner first complaint, Petitioner asked for time to file an Amended Complaint for Mandamus.  The Court granted the Motion.  (C3).

6.  On February 16, 2006, Petitioner filed a Pro Se Complaint for Mandamus (C3; 78-112).

7.  The Court reappointed the same counsel for Petitioner.  (C27).  The Director filed a second Motion to Dismiss on April 16, 2006, Petitioner file a Pro Se Motion for an Extension of Time to file a response due to the Motion to Dismiss.  (C11407).

2

8. On April 17, 2006, the Court held a hearing, with Petitioner attorney present.
(C3). Over the objection of Petitioner's counsel, the Court granted the
Defendant Motion to Dismiss.

9. On April 20, 2006, the Court denied Petitioner request for an extension of time
to file a response to the Defendant Motion to Dismiss. (C3). The Court
confirmed the earlier order of dismissal.

10. The Petitioner appealed this dismissal to the Appellate Court of Illinois. Fourth
Judicial District. On June 1, 2007. The dismissal of the Petitioner Amended
Complaint was affirmed by the Appellate Court. No. 4-06-0404. (Attached Ex.
A) The Supreme Court denied Petitioner Petition for
leave to appeal on november 1, 2007. no. 104899.

## ARGUMENT

Pittman was not provided the place, time or date of offense he is alleged to have

committed or a written statement of the conduct observed or employees who were

witnesses that reasonably informed him of the subject of the investigation. Pittman

was issued investigative disciplinary report, on January 13, 2005. He was not

proved with the place, time and date of the offense. He was alleged to have

committed, nor was he provided with a written statement of the conduct observed or

the names of employees who were witnesses that reasonably informed Pittman of the

subject of the investigation so that he could marshall the facts in his defense, and this omission of information was not withheld because of safety and security, as the record did not contain a written statement to that effect. (C.P. 23, 24). The language of the rule does create a mandatory duty. It clearly states to the extent know or available. Pittman has demonstrated a non-discretionary duty required of the defendant, Walker, to provide an investigative report that reasonably informs Pittman of the subject of the investigation. (C.P. 94)

### REPEATED REQUESTS FOR STAFF ASSISTANCE WERE DENIED

Prison officials have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges. No additional procedures are required to implement that obligation. When the inmate is disabled, either by being confined full time to S.H.U. Pittman submitted a written request to the adjustment committee seeking staff assistant as his placement in segregation prevented him form adequately preparing a defense. Pittman needed the staff to obtain his witnesses' names as well as material documents that he could not get himself while in segregation. (C.P. 20). Also, prior to appearing before the adjustment committee on February 7, 2005, Pittman verbally requested assistance from his segregation counselor in preparing a defense because he was unable to do so while in segregation. Pittman's segregation counselor Ms. Carlock, responded to this verbal request by stating that counselors on staff do not participate in adjustment committee proceedings and that counselors

are not paralegals. (C.P. 83). On February 7, 2005, Pittman was summoned before

the adjustment committee regarding the February 1, 2005, disciplinary report.

Pittman made an oral statement requesting staff assistance in order to make an oral

statement requesting staff assistance in order to marshall the facts in his defense.

To obtain relevant material such as his interview report, a report that Pittman

refuse to sign because it stated that Pittman remarked during said interview that he

did not recall names of inmates whom he had prepared legal work for or that he had

no comment, which was not true. Pittman also wished to obtain the name of the

other officer that was present at said interview and who could have corroborated

Pittman's statement. Furthermore, Pittman informed the committee that he had

submitted a request slip dated February 2, 2005, requesting staff assistance. The

adjustment committee denied Pittman's request and did not give a written reason

why in the summary even though said request was orally and in writing. (C.P. 18-

19, 83-85). Pittman sent a request slip dated February 7, 2006 to counselor Carlock

asking her to explain her refusal to aid and assist him in the preparation of his

defense. Counselor Carlock responded by stating that unless a staff member is a

direct witness to the incident, counseling staff does not participate in the adjustment

committee process. If you need help in preparing a grievance concerning

disciplinary action you my contact you counselor for the form and the counselor can

assist you in you have problems reading or writing in order to prepare the

grievance. Counselors are counselors, not paralegals. (C.P. 21, 22). Defendant's

policy in not allowing staff to assist inmate Pittman to prepare his defense in the

adjustment committee process did not comply with the requirements of due process. (C.P. 83-85). Pittman has demonstrated a non-discretionary duty required of the defendant, Walker, which was not fulfilled.

## NAMES OF THE EMPLOYEES AND INMATES INVOLVED
## IN THE INCIDENT WERE IMPROPERLY WITHHELD

Section 504.30(d) states that "the disciplinary report must be fully completed. The reporting employee shall provide the following information to the extent known or available...the names of the offenders, employees and visitors who were witnesses." 504.30(d)(5). Pittman was not provided with the other officer's name that was present during his interview on February 1, 2005, or the names of employees who were witness to the alleged money order that arrived in the mail room and was allegedly deposited in Pittman's trust fund account, nor the name of the employee who allegedly recorded and monitored the telephone call dated January, 2005 on the inmate telephone system. Further Pittman was not provided with the names of inmates that Shields told Lt. Thompson, Pittman allegedly charged money or commissary in exchange for legal work. Pittman's requests for neither the adjustment committee improperly denied the aforementioned information, nor did the committee provide any reason in its summary why said information was not provided (C.P. 100-101). IN fact, the adjustment committee's summary stated "Based on reporting employee's statement that inmate was charging inmates here at Graham Correctional center money or commissary for legal work done by Pittman, #A90850. Lt. Thompson stated that the money order and phone call dated January 9, 2005, were traced to the same address. This establishes that it was not a single

6

incident involving Pittman and Shields, and employees and visitors who were witnesses to these alleged money orders and recorded phone calls. (C.P. 23, 24). Pittman has demonstrated a clear right to mandamus relief and states a claim that Walker violated his constitutional rights, and failed to follow established departmental regulations.

**PITTMAN'S ADJUSTMENT COMMITTEE SUMMARY FILED TO INCLUDE HIS ORAL STATEMENT IN THE RECORD OF PROCEEDINGS AND PITTMAN WAS NOT PROVIDED WITH A COPY OF ANY CORRECTED REPORT OF THESE NEWLY ALLEGED FACTS**

Section 504.80(h)(4) provides that "Requests by offender for witnesses may be denied if their testimony would be, among other matters, irrelevant or cumulative or would jeopardize the safety or disrupt the security of the facility. If any witness request is denied, a written reason shall be provided. Pittman was summoned before the adjustment committee regarding he February 1, 2005, disciplinary report. Pittman made an oral statement concerning the charges. Pittman requested staff assistance to marshall his defense, to obtain relevant material such as his interview report that showed he obtain relevant material such as his interview report that showed he refused to sign because said report stated that Pittman did not recall or had no comment, a statement that was not true, and requested that name of the other officer who was present at the interview because this officer could have corroborated Pittman's statement. (C.P. 83). Pittman furthermore told the committee that he had sent a request slip dated February 2, 2005, requesting staff assistance and also requested an extension of time to prepare for his hearing. The adjustment committee denied Pittman's request and failed to give a reason for his denial

7

even though Pittman's request was both in writing and verbal. Pittman pleaded guilty and requested the names of employees who were witnesses to the alleged money order that arrived in the mail room and was the name of the witness that allegedly recorded account as well as the name of the witness that allegedly recorded and monitored telephone call dated January 9, 2005, on the inmate telephone system. (C.P. 84). Pittman requested inmate Shields' #B45732, interview report to obtain names of inmates that Shields said Pittman has charged money or commissary in exchange for legal work in order to call them as witnesses to undermine Shields' statement and the names of additional inmates that provided information to prison officials who allegedly state that their friends and family outside the prison send money orders to Pittman at Graham Correctional Center by way of U.S. Mail in exchange for legal work Pittman and/or had done. (C.P. 84). Pittman's request was ignored. Pittman also told the committee he did not commit offense #110 Impeding or Interfering with Investigation and had never heard of this offense prior to its inclusion in the disciplinary report and that there was never any Warden Bulletin or copies thereof to inform Pittman or other inmates regarding offense #110 and the penalties that could be imposed for said offense. (C.P. 85). On February 8, 2005, Pittman received a copy of the adjustment committee summary and noticed that the committee failed to include his oral statement in the record of the proceedings, nor did the committee give a written reason for the denial of Pittman's request for witnesses. (C.P. 23-24, 86). Therefore, the adjustment committee's summary did not comply with either the requirement of due process or the Illinois Department of Correction rules.

## NO RELIABLE EVIDENT WAS PRESENT ON THE RECORD
## TO SUPPORT A FINDING OF PITTMAN'S GUILT

Pittman's discipline involved his right to due process. Pittman's states a claim in regard to the adjustment committee's statement of the evidence relied upon to determine his guilt. In stating the evidence relied upon the Illinois Department of Correction did not comply with due process or its own procedural requirements. The Illinois Department of Correction rules require: A written record shall be prepared and signed by all members of the adjustment committee which obtains; 1- a summary of oral and written statements and other evidence presented. If the committee members find that the committed person committed the offense, they shall provide a statement as to their reasons for their findings. 20 Ill.Administrative code 5.4.80(1)(3). The adjustment committee states their basis for their decision was based on the reporting employee's statement that Pittman was charging inmates money or commissary at Graham Correctional Center for legal work done by Pittman #A90850. (CP. 23, 24). Nowhere in the reporting employee's disciplinary report statement was this allegation made, and this renders the adjustment committee's basis for a finding of guilt inaccurate and improper. Also, at no time during the disciplinary proceedings. Also, at no time during the disciplinary proceeding did Lt. Thompson state that Pittman responded that he had no comment or did not recall in response to Lt. Thompson's questions at Pittman's interview. The adjustment committee utilized inaccurate information as its basis for finding of guilt. (C.P. 23-24, 102). Inmate Shields, B45732, was interviewed and stated that inmate Pittman had charged him $125.00 for some legal work and had his girl send Pittman the money at Graham in the amount of $175.00

from Tia Smith.  Shields, #B45732, was not interviewed by the adjustment committee on February 7, 2005, presented (C.P. 102, 103) but the committee merely incorporated the disciplinary report into the proceedings.  (C.P. 23, 24).  There was no actual evidence presented at the hearing which demonstrated that inmate Shields give Pittman any legal documents to prepare any legal work or the name of any petition that Pittman would and/or had done for Shields.  Lt. Thompson was interviewed and stated that Tia Smith is an alias and that Ms. Smith is the girlfriend of Myrio Shields, #B45732.  Lt. Thompson stated that the money order and phone call dated January 1, 2005, were traced back to the same address.  (C.P. 23, 24) 20 Ill Admin Code 504 Appendix A, offense numbers and definition #306 Transfer of Funds states. . . "Causing money to be transferred from one trust fund account to another or through an outside source to the account of another offender."  There was no evidence presented in the record to show that $75.00 was deposited in Pittman's trust fund account at Graham Correctional Center.  (C.P. 17, 18, 19, 23-24).  The committee did not give its reasons for discrediting Pittman's version of events.  This clearly qualifies as "no reliable evidence."  (C.P. 103).  Therefore, the complaint and attached documents demonstrated that the Illinois Department of Correctional did violate its own procedures, as well as Pittman's constitutional right to due process by determining his guilt without any reliable evidence.  (C.P. 103).

## PITTMAN STATES A CLAIM THAT THE ADJUSTMENT COMMITTEE FAILED TO PROPERLY CONSIDER HIS ORAL EVIDENCE IN MITIGATING FACTORS BY NOT PROVIDING A WRITTEN RECORD OF HIS STATEMENT

730 ILCS 5/3-8-7(e)(3) state "Any person charged with a violation of rules is entitled to a

hearing on that charge at which shall have an opportunity to appear before and address the person or person deciding the charge.

20 ILL Admin Code 504.80(f) provides any offender charged with a violation of rules shall have the right to appear before and address the committee.

Illinois Department of Correction's rules require:

"A written record shall be prepared and signed by all members of the adjustment committee which contains; 1- a summary or oral and written statements and other evidence presented.  If the committee members find that the committed person committed the offense, they shall provide a statement as to their reasons for the finding." 20 ILL Admin Code 504.80(1)(3) and recommending disciplinary action.  The adjustment committee summary record of the proceedings states "That I.D.R. was read to the inmate and reviewed by the committee.  Inmate plead no guilty." (C.P. 23, 24).  Pittman presented oral evident in mitigating factors that had no major disciplinary reports and had secured a work assignment since his incarceration at Graham Correctional Center, and that he did not know he was in violation of rule #110 Impeding or Interfering with an Investigation because Pittman was not provided notice of this new rule under which he was to be the subject of possible sanctions.  The adjustment committee failed to properly consider Pittman's oral evidence in mitigating factors by not providing him with the opportunity to present oral evidence, (C.P. 104) and lacking reasons for recommending disciplinary action. U.S.C.A Const. Amend. 14; 20 ILL. Admin Cod 504.80(1)(3).  Pittman complaint

11

and attached documents, and the language of the above reference procedures, statutory and due process create a mandatory duty. Therefore, Pittman's entitlement to due process was not satisfied.

## EQUAL PROTECTION CLAIM

The adjustment committee violated the Petitioner's due process rights and Department of Corrections rules by filing to state its reasons for recommending disciplinary action in the written final summary report. Attached to his petition are copies of the written summary report stating its reasons for a finding of guilt and listing the reccomnded disciplinary acations, but lacking reasons for recommending disciplinary action. In this case, the adjustment committee in aggravating failed to provide sufficient reasoning to justify the severity of the sanctions imposed on Pittman in light of the punishment imposed on inmates found in violation of the same offense, which is much less harsh. Inmate Miguel Luna, #K99580, race hispanic, was found in violation of offense #110 Impeding or Interfering with an Investigation, an offense that carries a maximum penalty of one year loss of privileges, one year reduction in grade, one year revocation of good time and one year confinement in disciplinary segregation. Inmate Luna was sanctioned with one month demotion to C grade, one month segregation and a discip0linary transfer. (C.P. 25). Inmate Jerry Nichols, #K02623, race white, was found in violation of multiple offenses #305 Theft, #110 Possession of Contraband/Unauthorized Property and was sanctioned to one month demotion to C grade, one month segregation, order to pay restitution of $26.79 to be

paid to the Illinois State Treasury and disciplinary transfer. (C.P. 26). The

aforementioned inmates, as well as other inmates at Graham Correctional Center who

allegedly committed by Petitioner all received lesser sanctions that those imposed upon the

Petitioner himself, and none of them lost a single day of good time. (C.P. 105, 106) (see

Petitioner's Brief p. 44-46) The adjustment committee practiced intentional race

discrimination when it sanctioned the Petitioner, who is black, more severely than white

and hispanic inmates charged with similar or the same offenses, and this demonstrates a

clear violation of equal protection under the fourteenth amendment. Therefore, Pittman's

entitlement to due process was not satisfied.


### PITTMAN'S DUE PROCESS CLAIM FOR FAILING TO BE PROVIDED WRITTEN NOTICE OF PROHIBITED CONDUCT BEFORE BEING SANCTIONED FOR SAID CONDUCT DOES CLEARLY STATE A CAUSE OF ACTION FOR RELIEF

The court held that it has long been recognized that due process require advance warning

and sufficient delineation of prohibited conduct prior to the imposition of disciplinary

sanctions. It is clearly established, both by common sense and by precedent, that due

process requires fair notice of what conduct is prohibited before a sanction can be

imposed." Pittman was never informed of the existence of offense #110 Impeding or

Interfering with an Investigation prior to its inclusion in his disciplinary report. (C.P. 107,

108). The only bulletin Pittman received was in 1998 Section 504 Table A maximum

penalties and definitions which do not list offense #110. (C.P. 46-19). There was no

bulletin in either the prison library or the housing units. The defendant was required to

give Pittman fair notice of what conduct is prohibited before a sanction could be imposed

13

upon him for said offense.  Therefore, Pittman's entitlement to due process was not

satisfied and he does establish a clear right to the relief requested, deletion of prison rule

#110.


### PITTMAN DOES ESTABLISH A CLEAR RIGHT TO MANDAMUS REFLIEF, AS HE DI NOT RECEIVED THE DUE PROCESS TO WHICH HE WAS ENTITLED REGARDING THE GRIEVANCE PRO-CEEDINGS REGARDING PITTMAN'S GRIEVANCE OF MARCH 8, 2005

Section 3-5-1 (b) is, in relevant part, as follows; if the department....makes a determination

under this code which affects the length of the period of confinement or commitment, the

committed person and his counsel shall be advised of factual information relied upon by

the department... to make the determination...730 ILCS 3-5-1(b).  In this case, Pittman

filed a Grievance concerning the report dated February 1, 2005, to the administrative

review board.  (C.P. 27-31).   On May 13,  2005 Pittman appeared fore a hearing.

Pittman's grievance was denied.  (C.P. 33).  The administrative review board conducted an

inadequate review of the adjustment committee's holding.  Specifically, it did not examine

the record of the proceedings and did not examine the basis for the decision to revoke good

time credits.  (C.P. 23, 24)  The board stated that Pittman requested counselor Carlock's

assistance to file a grievance as it pertains to this issue.  (C.P. 33).  In fact, Pittman

requested that counselor Carlock help at the adjustment committee to prepare his defense

and she refused.  (C.P. 21, 22).  The board's finding was only based on Pittman's

disciplinary report.  (C.P. 18, 19).  The review board did not make a factual basis for that

decision to revoke good conduct credits.  Pittman's claim that the applicable statue and due

process entitled him to know the factual basis information he seeks.

14

### PITTMAN DOES ESTABLISH A CLEAR RIGHT TO MANDAMUS RELIEF REGARDING THE TIME FRAMES AND PROCEDURES FOR RESTORATION OF GOOD CONDUCT CREDITS AND FACTUAL BASIS

20 ILL Admin Code 107.160(d) provides the committed person may petition not more frequently than every three months through the adjustment committee for restoration of statutory good time or good conduct credits, stating the rationale for restoration. If the adjustment committee recommends the restoration of good time, said recommendation shall be forwarded through the designated channels to the attention of the Director. Notification of the director's decisions hall be given the committed person.   And Section 3-5-1(b) of the code provides that, in pertinent part, as follows; "If Illinois Department of Corrections makes a determination under this code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of the factual information relied upon the make the determination by Illinois Department of Corrections."  730 ILCS 5/3-5-(b).  In this case, on February 7, 2005, Pittman was summoned before the adjustment committee regarding the February 1, 2005, disciplinary report.  The adjustment committee found Pittman guilty of all charges. (C.P. 23, 24). Pittman requested that his counselor, S. Russell, in April of 2005 to submit him for the restoration of good conduct credits.  On May 5, 2005, Russell informed the Petitioner that he would be eligible for good time credit restoration on July 13, 2005, 6 months after the date of the ticket. (C.P. 114).  On August 15, 2005, Pittman sent a letter to Russell to remind her to submit him for restoration of good conduct credits.  She responded that she had done so. (C.P. 115).  On August 16, 2005, Ms. Russell submitted Pittman for and obtained approval for the restoration of one month restoration of good conduct credits by

the institution. But the director subsequently denied this restoration on September 26, 2005. (C.P. 29-31). On November 21, 2005, upon Pittman's request, counselor Smith submitted Pittman for restoration of good conduct credits and obtained approval for the restoration of one month of good conduct credits by the institution on November 28, 2005 and was subsequently approved by the director on January 4, 2006. (C.P. 116). The unwritten policy compelling Pittman to wait until August 8, 2005, 6 months after his ticket, to be submitted for restoration of good conduct credits, denied Pittman twice of factual basis for that decision and only the counselors are allowed to submit inmates for the restoration of good time is not in accordance with the aforementioned rule. Pittman filed a grievance on the institutional level and was denied on November 21, 2005. (C.P. 19-21). On December 20, 2005, the administrative review board denied his grievance without at all addressing his issues. (C.P. 122). Pittman's complaint and attached documents support his allegations that the defendant did violate his procedural due process rights by refusing to submit him for good conduct credits every 90 days, and further compounded this violation by not giving a factual basis for the reason he reached that decision and not allowing Pittman to petition the adjustment committee for restoration of good conduct credits stating his rationale. Therefore, Pittman is entitled to factual basis for that decision Pittman is entitled to the requested mandamus relief.

### PITTMAN WAS PROVIDED INADEQUATE REPRESENTATION BY COURT APPOINTED COUNSEL IN THE CIRCUIT COURT

In The case, on February 29, 2005, Pittman filed his initial complaint for order of mandamus in the circuit court. (C.P. 4-35). On August 3, 2005, Judge Frobish issued an

order appointing public defender, (C.P. 39). On August 30, 2005, Walker filed a motion to dismiss Pittman's complaint. (C.P. 50-52). On December 5, 2005, the circuit court granted Walker's motion to dismiss. (C.P. 2) The appointment of Mr. Casson was vacated. (C.P. 2). On December 15, 2005, Pittman's motion to extension of time to file amended complaint was filed. (C.P. 2). Pittman's motion alleged that he had received a letter from appointed attorney dated September 2, 2005, which enclosed was the defendant's motion to dismiss the Petitioner's complaint. (C.P. 73-74, 66).   On August 15, 2005, the Petitioner wrote Mr. Casson requesting that he schedule or schedule a phone call (C.P. 45, 74). Pittman also enclosed with the same letter the latest bulletin and the appropriate table of offenses and maximum penalties that was provided to Pittman and all inmates dated February 4, 1998, which don't stated offense #110 Impeding of Interfering with an Investigation. (C.P. 45-49, 74). Pittman requested that it be an exhibit in his amended complaint. (C.P. 74). Mr. Casson never scheduled a visit or a phone call, nor did he reply at all to the Petitioner's letter. Pittman received a letter dated December 6, 2005, from Mr. Casson advising him that the circuit court had granted the defendant's motion to dismiss and ordered his appointment as counsel to be vacated. (C.P. 68, 74).   On February 16, 2006 , Pittman's motion was granted. (C.P. 2). Pittman filed a pro se amended complaint on April 17, 2006. Walker filed a motion to dismiss Pittman's amended complaint   (C.P. 123-125) on April 17,2 006. The court held that due process had been accorded to the Petitioner and found an insufficient basis to grant any relief.   The court granted the defendant's motion to dismiss. (C.P. 3). On April 17, 2006, Pittman filed a motion for extension of time to file a response to the defendant's motion to dismiss. Pittman alleges that Mr. Casson had no

contact whatsoever to discuss the issues in his amended complaint or the defendant's motion to explain his intended arguments in opposition to the defendant's motion to dismiss. The delay in filing a response is in no way the fault of the Petitioner, and Pittman should not be held accountable for Mr. Casson's act of professional neglect in refusing to contact or communicate with his client. (C.P. 140-142). On April 20, 2006, the Circuit Court denied Pittman's Motion for Extension of Time to file a response to the defendant's Motion to Dismiss. (C.P. 3). Pittman was inadequately represented by Mr. Casson who did not aid in amending the Petitioner's pro se complaint or amended complaint. Mr. Casson did not file any reply or legal memorandum in response to either of the defendant's motions to dismiss the Petitioner's complaint. Pittman was unable to do research or consult with inmate law clerks. (C.P. 75, 76). Mr. Casson should have amended the complaint so as to clearly state a cause of action for mandamus under the facts of the case. Counsel did not exercise due diligence in the performance of his duties.

## CONCLUSION

WHERFORE, the foregoing reasons, petitioner prays that this court grant petitioner relief

to which he may be entitled in this proceeding.

Respectfully submitted

*Michael Pittman*

**Michael Pittman**
**16725 Trapet Avenue**
**Hazel Crest, Illinois  60429**

I declare under penalty of perjury that
the foregoing is true and correct.

*Michael Pittman*  2-5-08
**Michael Pittman**              **Dated**

NO. 4-06-0404

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT



|  |  |  |
|---|---|---|
| MICHAEL PITTMAN, | ) | Appeal from |
|       Plaintiff-Appellant, | ) | Circuit Court of |
|       v. | ) | Livingston County |
| ROGER E. WALKER, JR., | ) | No. 05MR92 |
|       Defendant-Appellee. | ) |  |
|  | ) | Honorable |
|  | ) | Harold J. Frobish, |
|  | ) | Judge Presiding. |

---

### ORDER

On February 15, 2006, plaintiff, Michael Pittman, an inmate at Hill Correctional Center, filed an amended pro se complaint for mandamus in which he alleged defendant, Roger E. Walker, Jr., Director of the Department of Corrections (DOC), violated his due-process rights in prison disciplinary proceedings.

On April 6, 2006, defendant filed a motion to dismiss Pittman's complaint. Counsel was appointed to represent plaintiff. A hearing was held on April 17, 2006, at which time, over plaintiff's counsel's objection, the trial court granted defendant's motion to dismiss.

Pittman appeals, arguing (1) the trial court erred by dismissing his mandamus complaint and (2) he received inadequate representation by counsel. We disagree and affirm.

### I. BACKGROUND

Following disciplinary proceedings at Graham Correctional Center, Pittman filed his original complaint for mandamus



on July 29, 2005.  This complaint and the attachments show the
following. On January 13, 2005, Pittman was placed in segregation
on investigative status following the issuance of an investiga-
tive report.  On February 1, 2005, Pittman was interviewed
regarding an incident that had occurred in January where Pittman
had charged another inmate, Myrio Shields, for legal work Pittman
was doing for him.  Pittman responded "no comment" or "don't
recall" to the questions asked him by a correctional official.
Inmate Shields was also interviewed that day.  Shields stated
Pittman did legal work on his behalf in their unit and in the law
library.  Shields stated Pittman usually charged $150 for his
services but told Shields he was willing to "work something out"
and would charge him only $125.  Pittman wanted Shields to send
the money to a woman outside the prison, but Shields preferred to
pay Pittman directly.

On January 9, 2005, Shields placed a telephone call to
a woman outside the prison.  A recorded message at the beginning
of all calls placed by inmates informs them their conversations
can be monitored or recorded.  This call was recorded.  Shields
gave the phone to Pittman, who told the woman his name and inmate
number so she could send him $75.  Pittman spelled his name and
repeated his inmate number.  After being placed in segregation
for this investigation, Pittman sent word to Shields he received
the $75 from the woman.

On February 1, 2005, Pittman was served with a disci-
plinary report charging him with violating the following DOC
rules:  (1) Rule 406 (trading or trafficking); (2) Rule 306
(transfer of funds); (3) Rule 310 (abuse of privileges); and (4)

Rule 110 (impeding or interfering with an investigation) (20 Ill. Adm. Code §504, A, Tables A-C (Conway Greene CD-ROM June 2003)).

Following a February 7, 2005, adjustment committee hearing, the committee found Pittman guilty of all charges. The committee's final summary report stated the basis for the commit-tee's decision in pertinent part as follows (inmate numbers omitted):

> "Based on reporting employee's statement that inmate was charging inmates here at Graham Correctional Center money or commissary for legal work done by Pittman. During the in-vestigation Pittman stated that he didn't recall or he had no comments to all the ques-tions that LT. Thompson asked him. Inmate Shields was interviewed and he stated that inmate Pittman had charged him $125.00 for some legal work and he had his girl send Pittman the money here at Graham in the amount of $75.00 from Tia Smith. LT. Thomp-son, INTEL was interviewed and stated that Tia Smith is a [sic] alias and that she is the girlfriend of Myrio Shields. LT. Thomp-son stated that the money orders and phone call dated 1/9/05 were traced back to the same address."

The committee recommended the following sanctions be imposed on Pittman: (1) one year of relegation to C-grade status, (2) one year in segregation, (3) revocation of one year

A  - 3 -

of good-conduct credit or statutory good time, and (4) disciplin-
ary transfer. The chief administrative officer agreed with the
committee's recommendations, and these sanctions were imposed.

On March 8, 2005, Pittman filed a grievance with the
administrative review board complaining about the fairness and
results of the February 2005 hearing. On May 13, 2005, the
administrative review board held a hearing and interviewed
Pittman. He stated the Rule 110 charge (impeding or interfering
with an investigation) was not true but stated he did get the
money Shields sent him. Pittman also complained the dates on the
investigation report were incorrect.

In its report, the board noted it interviewed Pittman
and reviewed all information submitted by Pittman and the insti-
tution relating to the issue being grieved. The board's recom-
mended finding was as follows: "Based on a review of all informa-
tion and a compliance check of the procedural due[-]process
safeguards outlined in Department Rule 504, the Board is reason-
ably certain the [g]rievant committed the offense, and therefore
recommends the grievance be denied."

In his original complaint for mandamus, Pittman alleged
the disciplinary proceedings did not comport with the administra-
tive regulations or the requirements of constitutional due
process, equal protection, and the prohibition against cruel and
unusual punishment. The trial court granted Pittman's motion for
appointment of counsel. On August 30, 2005, defendant filed a
motion to dismiss the complaint.

On December 5, 2005, a hearing was held on defendant's
motion to dismiss. Pittman's appointed counsel appeared in

person and defendant's attorney by telephone.  Pittman's counsel objected to dismissal but the trial court dismissed the complaint without prejudice.  Counsel's appointment was canceled after dismissal of the complaint.

On February 15, 2006, Pittman filed his amended pro se complaint for mandamus.  The complaint requested the following relief:  (1) an investigative report reasonably informing him of the subject of the investigation; (2) an interview by a reviewing officer after the investigative report is issued; (3) a rehearing of the February 1, 2005, disciplinary hearing or expungement of the report and rescission of sanctions; (4) deletion of Rule 110; and (5) a finding plaintiff has the right to these acts.  In addition to plaintiff's 3-page complaint, he filed a 30-page memorandum of law in which he set forth background facts and presented argument.  Counsel was again appointed to represent plaintiff.  Defendant again filed a motion to dismiss.  After argument on April 17, 2006, the trial court dismissed the amended complaint over appointed counsel's objection.  The trial court found the following: (1) plaintiff is not entitled to more than he received regarding the investigative report, (2) plaintiff's timing regarding interviews is not shown to provide a basis for relief; (3) due process was accorded plaintiff, and (4) an insufficient basis has been shown to grant any relief requested.

This appeal followed.

## II. ANALYSIS

### A. Pittman's Claim Trial Court Erred in Dismissing Mandamus Complaint

A trial court's decision to dismiss a mandamus com-

plaint for failure to state a cause of action is reviewed de novo. Torres v. Walker, 364 Ill. App. 3d 666, 670, 848 N.E.2d 156, 159 (2006). On de novo review, a trial court's judgment may be sustained on any ground presented by the record. People v. Ivy, 313 Ill. App. 3d 1011, 1017, 730 N.E.2d 628, 635 (2000).

> "Mandamus relief is an extraordinary
> remedy to enforce, as a matter of right, the
> performance of official duties by a public
> official where the official is not exercising
> discretion. A court will not grant a writ of
> mandamus unless the petitioner can demon-
> strate a clear, affirmative right to relief,
> a clear duty of the official to act, and
> clear authority in the official to comply
> with the writ." Hatch v. Szymanski, 325 Ill.
> App. 3d 736, 739, 759 N.E.2d 585, 588 (2001).

Plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action. City of Chicago v. Beretta U.S.A. Corp., 213 Ill. 2d 351, 368, 821 N.E.2d 1099, 1112 (2004). A complaint is deficient if it does not allege the facts necessary for recovery. Chandler v. Illinois Central R.R. Co., 207 Ill. 2d 331, 348, 798 N.E.2d 724, 733 (2003). When consider-ing a motion to dismiss for failure to state a cause of action, a trial court is to consider only the allegations of the pleadings. Chandler, 207 Ill. 2d at 349, 798 N.E.2d at 733.

Pittman's amended complaint consists of three pages describing the parties, the proceedings in the trial court, and the five types of relief he seeks. One paragraph states he did

not receive his rights under the prison regulations in violation
of his right to due process. However, he alleges no facts and
mentions no events that occurred in the prison disciplinary
proceedings, nor does he state how defendant or other parties did
not follow correct disciplinary or grievance procedures. In-
stead, he refers to the memorandum of law he filed.

The rules of civil procedure require the trial court to
consider only the allegations of the pleadings on a motion to
dismiss. Chandler, 207 Ill. 2d at 349, 798 N.E.2d at 733. The
complaint itself must set forth facts, not argument or conclu-
sions. Beretta U.S.A., 213 Ill. 2d at 368, 821 N.E.2d at 1112-
13. Thus, the trial court must not consider the facts and
arguments presented in plaintiff's memorandum of law when decid-
ing defendant's motion to dismiss. "Although pro se pleadings
are normally liberally construed [citation], a liberal construc-
tion will not be utilized to remedy the failure of a complaint to
plead sufficient facts to establish a cause of action." Turner-
El v. West, 349 Ill. App. 3d 475, 479, 811 N.E.2d 728, 733
(2004).

After reviewing plaintiff's complaint, we find it does
not state a cause of action for mandamus and was properly dis-
missed.

B. Pittman's Claim of Inadequate Representation by Counsel

Pittman argues he received inadequate representation by
counsel because counsel did not amend Pittman's pro se amended
complaint, did not file any reply or legal memorandum in response
to either motion to dismiss Pittman's complaints, and never met
with Pittman to discuss the case.

A - 7 -

Prisoners have no right to appointed counsel in a civil suit either at trial or on appeal. <u>Tedder v. Fairman</u>, 92 Ill. 2d 216, 225, 441 N.E.2d 311, 315 (1982). <u>Mandamus</u> is a type of civil action that confers no right to counsel. <u>Marrero v. Peters</u>, 229 Ill. App. 3d 752, 755, 593 N.E.2d 1166, 1168 (1992). However, the trial court may, in its discretion, appoint counsel to represent indigent plaintiffs. <u>Tedder</u>, 92 Ill. 2d at 227, 441 N.E.2d at 315. Once counsel has been appointed, counsel is expected to exercise due diligence in proceeding with the case. <u>Tedder</u>, 92 Ill. 2d at 227, 441 N.E.2d at 315-16. The <u>Tedder</u> court's reference to due diligence is an admonition to counsel to go forward in good faith. <u>Marrero</u>, 229 Ill. App. 3d at 755, 593 N.E.2d at 1168.

However, even if due diligence was not exercised by appointed counsel, no remedy is available to plaintiff on appeal because <u>mandamus</u> is a civil action in which no constitutional right to counsel exists. <u>Marrero</u>, 229 Ill. App. 3d at 755, 593 N.E.2d at 1168. Further, Pittman's primary complaint seems to be counsel did not amend his complaint to state a cause of action for <u>mandamus</u>. While the complaint itself does not allege facts supporting <u>mandamus</u>, it is clear the trial court also read the memorandum and dismissed the case because Pittman failed to state a sufficient basis for relief. Thus, there appears to be nothing counsel could have added to the amended complaint that would have withstood a motion to dismiss, and Pittman does not mention anything that could have been added.

For these reasons, the performance of Pittman's appointed counsel does not entitle Pittman to any relief.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., with McCULLOUGH, J., concurring.

STEIGMANN, P.J., specially concurring.

PRESIDING JUSTICE STEIGMANN, specially concurring:

This case reminds me of the old adage that "no good deed shall go unpunished."  The record is not clear as to why the trial court thought it appropriate, in the exercise of its discretion, to appoint counsel to represent Pittman on his mandamus complaint.  That Pittman now seeks to have this court reverse the trial court on the ground that his court-appointed counsel provided inadequate representation hardly seems condign punishment for the court's act of grace in appointing counsel in the first place.  Perhaps the best course would have been not to have counsel appointed at all.