# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL PITTMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 08 C 849 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| NANETTE CASANOVA, Parole Officer, and ) | |
| JAC CHARLIER, Parole District Supervisor,[1] ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Michael Pittman ("Pittman") is currently serving a term of mandatory supervised release in Illinois Parole District 1. Pittman claims that a prison disciplinary proceeding violated his rights to due process and equal protection under the Fourteenth Amendment and seeks a writ of habeas corpus [1] pursuant to 28 U.S.C. § 2254 to terminate his parole. For the reasons set forth below, Petitioner's petition for a writ of habeas corpus is respectfully denied.

## I. Background

### A. Factual Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the following

---

[1] The Court hereby substitutes Nanette Casanova, Petitioner's parole agent, and Jac Charlier, the District 1 parole supervisor, for Roger Walker. Rule 2(a) of the Rules Governing § 2254 Cases requires that a petitioner name as respondent the state officer that has current custody. Because the custody that Petitioner challenges is his parole, the state agents responsible for Petitioner's custody are the appropriate respondents.

accounts from the Illinois Appellate Court's Order in *Pittman v. Walker*, No. 4-06-0404 (Ill. App. 4th Dist. June 1, 2007). Ex. H[2] (Appellate Court's Order in Appeal No. 4-06-0404).

In 1981, Pittman was convicted of two counts of armed robbery and sentenced to fifty years of imprisonment after a jury trial in the Circuit Court of Cook County. While serving his sentence at Graham Correctional Center in January 2005, Pittman was placed in segregation pending the investigation of an incident in which Pittman allegedly had charged another inmate, Myrio Shields, for legal work that Pittman had been doing for him. Ex. H at 2. During an interview with a correctional officer on February 1, 2005, Pittman answered "no comment" or "don't recall" when he was confronted with the allegations. *Id*. On the same day, correctional officials also interviewed inmate Shields, who stated that Pittman did legal work on his behalf and that Pittman usually charged $150 for his services. Shields also revealed that Pittman had offered to work for him for $125 and that Pittman had asked Shields to send the money to a woman outside of the prison. *Id*. On January 9, 2005, Shields placed a telephone call to a woman outside the prison and gave the phone to Pittman, who told the woman his name and inmate number so that she could send him $75. *Id*. After he had been placed in segregation for this violation, Pittman notified Shields that he had received $75 from the woman.

On February 1, 2005, Pittman was served with a copy of a disciplinary report [Ex. A] that charged him with violating four prison rules: (1) Rule 406 (trading or trafficking); (2) Rule 306 (transfer of funds); (3) Rule 310 (abuse of privileges); and (4) Rule 110 (impeding or interfering with an investigation). See 20 Ill. Adm. Code § 504, Appx. A, Tables A-C.[3] After a disciplinary

---

[2] The Court will refer to the state court materials that accompanied Respondent's Answer (as required by Rule 5(d) Governing Section 2254 Habeas Cases) by their exhibit designation.

[3] The four violations that Pittman was charged with committing are listed in the Illinois Administrative Code as follows:

hearing on February 7, 2005, an adjustment committee found Pittman guilty of all four charges and issued a report [Ex. B] stating the reasons for the committee's decision:

> [The decision is b]ased on [the] reporting employee's statement that [Pittman] was charging inmates here at Graham Correctional Center money or commissary for legal work done by Pittman. During the investigation Pittman stated that he didn't recall or he had no comments to all the questions that L[t]. Thompson asked him. Inmate Shields was interviewed and he stated that inmate Pittman had charged him $125.00 for some legal work[,] and he had his girl send Pittman the money here at Graham in the amount of $75.00 from Tia Smith. L[t]. Thompson, INTEL was interviewed and stated that Tia Smith is an alias and that she is the girlfriend of Myrio Smith. Lt. Thompson stated [] that the money orders and phone call dated 1/9/05 were traced back to the same address. Ex. B.

The committee also recommended that Pittman receive the following sanctions: (1) one year of relegation to C-grade status (which reduced the rate at which Pittman earned good-conduct credits); (2) one year in segregation; (3) revocation of one year of good-conduct credit; and (4)

---

110. IMPEDING OR INTERFERING WITH AN INVESTIGATION
Obstructing, impeding, or refusing to provide information relevant to an investigation.

* * *

306. TRANSFER OF FUNDS
Causing money to be transferred from one trust fund to another or through an outside source to the account of another offender or entering into contracts or credit agreements without written approval from the Chief Administrative Officer.

* * *

310. ABUSE OF PRIVILEGES
Violating any rule regarding visits, mail, the library, yard, commissary, telephone, or recreational activities. This includes corresponding or communicating with a victim, a victim's family member, or any other person after the offender has received notice that such person has informed the Department that he or she does not wish to receive correspondence from the offender. However, if the conduct also constitutes a violation of federal or State law, a committed person may also be charged under #501.

* * *

406. TRADING OR TRAFFICKING
Trading or trafficking with any person.

20 Ill. Adm. Code § 504, Appx. A.

disciplinary transfer. Ex. H at 4. The chief administrative officer accepted this recommendation and imposed all four sanctions on Pittman.

B.   **Procedural Background**

On March 8, 2005, Pittman filed a grievance with the Illinois Department of Corrections ("DOC"), challenging the sanctions that he received on due process and equal protection grounds.[4] Ex. C. The Administrative Review Board held a hearing and interviewed Pittman on May 13, 2005, but after a full review of the proceedings and Pittman's grievances, the Review Board concluded that the proceedings Pittman challenged had been fully compliant with DOC rules. The Review Board thus concluded that it was "reasonably certain [that] the Grievant committed the offense" and denied Pittman's grievance. Ex. D at C-34.

In July 2005, Pittman filed a complaint in the Circuit Court of Livingston County, Illinois, in which he sought mandamus relief from the disciplinary proceedings. Ex. H at 4. Pittman claimed that the proceedings were contrary to the DOC's administrative regulations and also violated his constitutional rights to due process, equal protection, and the prohibition of cruel and unusual punishment. *Id*. The Circuit Court granted Pittman's motion for appointment of counsel, but on December 5, 2005, the Court dismissed the complaint without prejudice and cancelled the counsel's appointment.

---

[4] In particular, Pittman claimed that he had not been afforded due process for nine distinct reasons: (1) the adjustment committee denied his request for an extension to prepare for his hearing; (2) the committee did not record his request for staff assistance in preparing his defense; (3) he had not been provided with his accuser's name or given an explanation for the nondisclosure; (4) his guilt had been determined "without any evidence;" (5) his statement was not placed on the record; (6) the committee did not consider mitigating factors; (7) he was not given prior notice of the time and place of the disciplinary hearing; (8) he did not have prior notice of Rule 110 (impeding or interfering with an investigation); and (9) his counselor had not explained why she would not help him prepare his defense before the adjustment committee. Ex. C at 31. Pittman also claimed that his punishment violated the Equal Protection Clause of the Fourteenth Amendment because he was sanctioned more severely than Shields and another inmate, Miguel Luna. *Id*.

4

Pittman subsequently submitted an amended, *pro se* complaint [Ex. E] in which he sought the following relief: (1) a writ of mandamus requiring that the DOC provide him with an investigative report informing him of the subject of the investigation, an interview by a reviewing officer following the investigative report, and a new disciplinary hearing or rescission of the charges and sanctions against him; (2) the elimination of Rule 110; and (3) a finding that Pittman had the right to these acts. Ex. H at 5. In addition to his three-page complaint, Pittman also filed a thirty-page memorandum of law in which he described the background facts and presented his arguments. The Circuit Court again appointed counsel to represent Pittman but nevertheless dismissed the amended complaint, over counsel's objection, on April 17, 2006. *Id*.

On May 11, 2006, Pittman filed a notice of appeal [Ex. F] with the Appellate Court of Illinois, Fourth District, in which he claimed that the Circuit Court erred in dismissing his complaint. Pittman also argued he had been inadequately represented by his court-appointed counsel. On June 1, 2007, the Appellate Court affirmed the Circuit Court's dismissal of Pittman's complaint for failure to state a cause of action. Ex. H at 6. The Appellate Court noted that Illinois law requires a plaintiff to allege facts sufficient to state a cause of action in a complaint; any additional documents, including Pittman's thirty-page memorandum, could not be considered for the purpose of a motion to dismiss. Having reviewed Pittman's complaint, the Appellate Court concluded that the Circuit Court had been correct to dismiss it.

The Appellate Court also found that there was no indication that Pittman's counsel had failed to exercise due diligence; however, it concluded that even if Pittman could have shown a lack of a good faith effort – such as counsel's failure to correct Pittman's amended complaint to include the pertinent facts from his legal memorandum – the point was moot because it would not have prevented the Circuit Court from dismissing Petitioner's claim. Instead, the Appellate

Court noted, "it [was] clear that the trial court also read the memorandum and dismissed the case because Pittman failed to state a sufficient basis for relief." Ex H at 8.

Pittman filed a petition for leave to appeal (PLA) in the Illinois Supreme Court on June 28, 2007. Ex. I. While his PLA was pending, Petitioner was released from prison on July 5, 2007, and placed on supervised release until 2010.[5] The Illinois Supreme Court denied Pittman's PLA on September 28, 2007. Ex. J

On February 8, 2008, Petitioner subsequently filed his petition for a writ of habeas corpus in this Court. Pittman's *pro se* petition makes three claims: (1) that his disciplinary proceedings violated his right to due process; (2) that the adjustment committee violated his right to equal protection by punishing him more severely than other inmates because of his race; and (3) that he received inadequate representation from his appointed attorney during the mandamus proceeding before the Illinois Circuit Court.

## II. Legal Standards

### A. The "In Custody" Requirement for Habeas Petitioners

In order for this Court to have jurisdiction, Pittman must have been "in custody under the conviction or sentence under attack" at the time that he filed his petition. *Maleng v. Cook*, 490 U.S. 488, 490 (2004) (internal quotation marks omitted); see also 28 U.S.C. § 2254(a). The mere fact that petitioner is in some type of custody at the time of filing is not sufficient to secure jurisdiction; rather, the custody must relate to the sentence being challenged. See *Maleng*, 490 U.S. at 491-92 (explaining that in *Carafas v. LaVallee*, 391 U.S. 234 (1968), the Court's holding rested on "the fact that the petitioner had been in physical custody *under the challenged conviction at the time* the petition was filed.") (emphasis added). A prisoner who has been

---

[5] The exact date of Pittman's scheduled release from parole is unclear. Absent any evidence to the contrary, the Court proceeds on the assumption that Pittman's claim is not moot.

placed on parole remains "in custody" under the related sentence because he still must abide by the conditions of his release (*Jones v. Cunningham*, 371 U.S. 236 (1963)); however, once a sentence has fully expired, a petitioner no longer is "in custody" under § 2254 and no longer can file a petition for a writ of habeas corpus regarding that sentence. *Maleng*, 490 U.S. at 491.

### B. The Exhaustion Doctrine

Prior to filing a habeas petition in federal court, a petitioner seeking relief from state custody must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also 28 USCS § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before proceeding to federal court. See *O'Sullivan,* 526 U.S. at 845; see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary and such review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (requiring a petitioner to present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that Court's review was discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and also must alert the state

court that the claim raised is based on federal law. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court," the Court cannot reach the merits. *Chambers*, 264 F.3d at 737-38; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim: although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner already has pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

### C. Procedural Default

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was

not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n. 9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review" – and the opportunity to raise that claim in state court has passed – the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026. Similarly, procedural default on independent and adequate state grounds occurs where the state court explicitly invoked a state procedural bar rule as a separate basis for its decision to deny the petitioner relief, even if a state court reaches the merits of the petitioner's challenge to his or her conviction in an alternative holding. See *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005) ("When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed.").

  **D. Federal Habeas Relief for State Prisoners**

If the district court finds that petitioner was in custody when he filed his appeal, that he exhausted his remedies at the state level, and that his claim was not procedurally defaulted, the court then considers the merits of the petition. A petitioner can challenge a state proceeding by showing that it was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or that it was "based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2) (2000) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)).

A state proceeding is "contrary to" clearly established federal law "if [it] arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law;

9

[or] if the state [proceeding] confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state proceeding constitutes an "unreasonable application" of clearly established federal law if the state proceeding identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. Notably, "an unreasonable application of federal law is different from an *incorrect* application of federal law," (*id.* at 410 (emphasis in original)); an "unreasonable" application requires that a state proceeding rest "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## III. Analysis

### A. The § 2254 "In Custody" Requirement

Petitioner is not challenging his original conviction and sentence of fifty years of imprisonment for two counts of armed robbery. Instead, Petitioner alleges due process and equal protection claims stemming from the February 2005 disciplinary proceedings in which Petitioner was determined to have violated four prison rules and then sanctioned with transfer to another institution, segregation, reduction in credit-earning class for a year, and loss of a year of good-conduct credits.[6] As of July 2007, Pittman was released from prison, but he was still on parole when he filed this petition in February 2008. Respondent does not challenge these facts; rather,

---

[6] State custody under § 2554 has been interpreted to include prison disciplinary sanctions. See *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); e.g. *Ball v. Grams*, 337 Fed. Appx. 566, 567 (7th Cir. 2009).

Respondent argues that Petitioner cannot satisfy the "in custody" requirement of § 2254 for two reasons: first, the "custody" being challenged in this petition – the sanctions imposed by the prison disciplinary board – fully expired when Petitioner was released from prison; and second, that Petitioner's parole is unrelated to these sanctions.

The Court does not accept Respondent's argument. There is a critical distinction between disciplinary sanctions that merely alter the conditions of a prisoner's incarceration and those that affect the duration of his confinement. See *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973) (establishing that actions to restore good-time credits fall "within the core of habeas corpus" because they attack the duration of the petitioner's confinement); see also *Moran v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) (directing prisoners to use 42 U.S.C. § 1983, not petitions under § 2254, to challenge administrative segregation and other non-durational changes in their custody status). When a prisoner challenges disciplinary sanctions that merely "alter[] the conditions of his incarceration, but not its duration," his continued confinement following the termination of those sanctions does not satisfy the "'in custody' [requirement] for purposes of § 2254 review * * *." *Pernokis v. McBride*, 67 Fed. Appx. 931, 932 (7th Cir. 2003). But when disciplinary sanctions affect a prisoner's good-conduct credits, they necessarily impact the duration of a prisoner's custody, regardless of whether that custody occurs in prison or on parole. See *White v. Indiana Parole Board*, 266 F.3d 759 (7th Cir. 2001) (refusing to dismiss a petition for a writ of habeas corpus for mootness because the loss of good-time credits necessarily affected the date of petitioner's release on parole and therefore the duration of the petitioner's custody); see also *Cox v. McBride*, 279 F.3d 492, 493 (2002) ("[T]he custody [petitioner] is challenging * * * is the additional [time in] prison that he must serve as the result of the [actions of the] prison disciplinary board.").

Although the term of the sanctions imposed on Pittman may have formally expired after one year, his loss of a year of good-time credits and the reduction of his credit-earning class almost certainly affected the duration of his custody by dictating, at least in part, when Petitioner started his parole.[7] Because neither side presents evidence that would cause the Court to second-guess the logical connection between the loss of good-time credits and the length of Petitioner's custody, the Court presumes that this is in fact the case.[8] And since Pittman was on parole when he filed this petition and the duration of his parole is directly related to the proceeding being challenged, the Court finds that Petitioner was "in custody" for the purposes of § 2254 and refrains from dismissing Pittman's petition on jurisdictional grounds.

B.  **Procedural Default**

Respondent also argues that Petitioner's claims were procedurally defaulted because the Illinois Circuit Court's dismissal of Petitioner's amended complaint was the result of a procedural error; however, this Court is not persuaded by Respondent's interpretation of Illinois law. While the Illinois Circuit Court granted the motion to dismiss Pittman's amended complaint for failure to state a cause of action pursuant to 735 ILCS 5/2-615 (Ex. H at 6), such dismissal does not constitute a procedural default; rather, it constitutes a final judgment on the merits. See *Slavov v. Marriott Int'l*, 990 F. Supp. 566, 570 (N.D. Ill. 1998) (explaining that "'[a]n involuntary dismissal of an action [under 735 ILCS § 5/2-615] * * * operates as an adjudication upon the merits' * * * and is considered a final and appealable order) (quoting Ill.

---

[7] In his reply brief, Pittman claims that "[t]he disciplinary board enhanced petitioner's prison sentence and supervised release by one year and did had have [sic] [an] effect on Petitioners [sic] supervised release[, which] [P]etitioner was serving at the time he filed this petition [and] constitutes 'custody.'" See Pet. Reply Brief.

[8] In *Boyd v. Parke*, 1997 WL 374846, at *3 (7th Cir. June 24, 1997), the Seventh Circuit held that a petitioner was no longer in custody because his disciplinary sanction had expired; however, *Boyd* is distinguishable because it only involved a challenge to disciplinary segregation, a sanction that had no effect on the duration of the petitioner's custody. *Id.*

Sup. Ct. Rule 273); see also *Leow v. A & B Freight Line, Inc.*, 175 Ill. 2d 176, 183-84 (1997) (recognizing that dismissal under 735 ILCS § 5/2-615 * * * is involuntary and that it therefore operates as an adjudication upon the merits under Ill. Sup. Ct. Rule 273).[9] Because the Circuit Court dismissed Petitioner's complaint pursuant to a merits-based ruling,[10] the independent and adequate state ground doctrine does not apply and the petition before the Court is not procedurally barred. The Court therefore turns to the merits of Petitioner's claims.

### C. The Merits of Petitioner's Habeas Petition

As an initial matter, Petitioner cites several administrative provisions that govern the procedural requirements for prison disciplinary hearings in Illinois (*e.g.* 20 Ill. Adm. Code 504.30 (2010)), but such claims fall outside of the scope of a petition for a writ of habeas corpus. In the context of habeas relief, this Court may only consider the extent to which the state proceedings violated Petitioner's constitutional rights. Thus, even if Petitioner were correct in asserting that his proceedings contravened Illinois administrative rules, this Court would not be able to afford him any relief unless the deficiencies described also constitute violations of Petitioner's constitutional rights.

---

[9] Illinois Supreme Court Rule 273 states that "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits."

[10] The Illinois Appellate Court ruled that for the purposes of a motion to dismiss, the Illinois Rules of Civil Procedure prevent a trial court from considering any allegations that are not contained in a party's amended complaint. Ex. H at 7. The Circuit Court therefore could not consider Petitioner's thirty-page legal memorandum, which he filed along with his amended complaint. *Id*. Respondent argues that this failure to follow the State's pleading requirements resulted in a dismissal of the case on adequate and independent state law grounds. While this procedural deficiency in Petitioner's pleadings may have contributed to the dismissal of his amended complaint, the Circuit Court's dismissal of Petitioner's complaint nevertheless constituted a final judgment on the merits.

The Court therefore limits its discussion to Petitioner's claim that his disciplinary proceedings violated his constitutional rights of due process and equal protection as well his claim that his legal representation before the Illinois Circuit Court was constitutionally inadequate.

### 1. *The Due Process Claims*

Petitioner contends that his disciplinary proceedings before the prison adjustment committee failed to satisfy the requirements of due process under the Fourteenth Amendment. As explained above, Petitioner's request for habeas relief may only be granted if his disciplinary proceedings were "contrary to, or involved an unreasonable application of, clearly established Federal law" or were "based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2). Petitioner therefore has the burden of showing that his disciplinary proceedings were contrary to established due process requirements or that the determinations made by his adjustment committee were based on an unreasonable determination of facts.

Illinois prisoners have a statutory right to receive good-time credits, 730 ILCS 5/3-6-3 (2010), and therefore are entitled to due process under the Fourteenth Amendment before those credits are revoked. See *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992); see also *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Due process in this context consists of five requirements: (1) advance, written notice of the disciplinary charges; (2) assistance of a fellow inmate or prison staff member in cases where the inmate is illiterate or the complexity of the issues makes it unlikely that the inmate will be able to defend himself comprehensively; (3) an opportunity to call witnesses and present documentary evidence to the extent consistent with institutional safety and correctional goals; (4) a written statement by the factfinder indicating the evidence relied on and the reasons for disciplinary action; and (5) confirmation that the

disciplinary board's decision is supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 570. For the reasons explained below, the Court determines that Petitioner's disciplinary proceedings were not contrary to established due process requirements nor were they based on an unreasonable determination of facts.

a. Notice

The Illinois Appellate Court found that on February 1, 2005,[11] Petitioner was served with a disciplinary report charging him with violating four prison rules: Rule 406 (trading or trafficking); Rule 306 (transfer of funds); Rule 310 (abuse of privileges); and Rule 110 (impeding or interfering with an investigation). Ex. H at 2. Petitioner's disciplinary hearing occurred six days later on February 7. *Id.* Since due process is satisfied as long as a prisoner receives written notice of the charges he is facing at least twenty-four hours prior to his hearing, *Hadley v. Buss*, 2010 U.S. App. LEXIS 14870, 6 (7th Cir. 2010), Petitioner received constitutionally adequate notice of the disciplinary proceedings against him.

b. Assistance

According to the Supreme Court in *Wolff*, a prisoner must receive assistance in preparing for a disciplinary hearing if he is illiterate or if the charges against him are complex. See 418 U.S. 539, 563-66. Petitioner nevertheless cites three cases[12] in which courts – including the

---

[11] Petitioner does not challenge the fact or timing of his receipt of this document.

[12] Petitioner cites *Aichens v. Lash*, 514 F.2d 55, 59 (7th Cir. 1975) ("In [situations where the inmate in unable to collect information due to his confinement] the inmate should be entitled to assistance in preparing and presenting his case."), vacated on other grounds, 425 U.S. 947 (1976); *Eng v. Coughlin*, 858 F.2d 889, 897 (2nd Cir. 1988) ("When the inmate is disabled, either by being confined full-time to [segregation] or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced."); and *Von Kahl v. Brennan*, 855 F. Supp. 1413 (M.D. Pa. 1994) ("One of the circumstances which warrants [constitutionally mandated] assistance is where an inmate's pre-hearing confinement interferes with his ability to prepare his defense.").

Seventh Circuit – have expressed support for the idea that a prisoner's confinement or transfer prior to his disciplinary hearing may give him a constitutional right to assistance. Nevertheless, the Seventh Circuit has since rejected expansive interpretations of a prisoner's right to assistance and held, contrary to the authorities cited by Petitioner, that "there is no basis for expanding the limited role of lay advocate assistance for prison inmates beyond that recognized in *Wolff*." *Miller v. Duckworth*, 963 F.2d 1002, 1004 (1992) ("*Wolff's* provision for lay assistance is plainly contingent on the inmate's illiteracy or the complexity of the case * * * "); see also *Doan v. Buss*, 82 Fed. Appx. 168, 172 (7th Cir. 2003) ("A prisoner has a right to a lay advocate only if he is illiterate or the issues presented are complex.").

Absent a more expansive reading of *Wolff* than has been recognized by the Supreme Court or the Seventh Circuit, Pittman's argument holds little sway as he does not contend that the issues facing him were too complex or that he was illiterate. Nor does the Court find evidence of either element in the record. All of the charges facing Petitioner were straightforward and adequately explained in the notice given to him before his disciplinary proceeding. In addition, Petitioner also has filed multiple *pro se* memoranda throughout the process of challenging his disciplinary proceedings and clearly is not illiterate. For these reasons, the Court finds that the refusal of prison officials to provide Petitioner with assistance in preparing for his disciplinary hearing did not violate his right to due process.[13]

        c.        The opportunity to present evidence

Read liberally, Pittman's claims about his lack of representation also can be construed to contend that he was effectively denied the opportunity to present evidence or produce witnesses

---

[13] Petitioner also argues that the adjustment committee should have given him a written explanation for its refusal to grant him staff assistance. Petitioner does not cite and the Court cannot identify any cases suggesting that a written response to a prisoner's request for assistance is required under the Fourteenth Amendment.

at his disciplinary hearing. Nonetheless, Pittman's petition merely describes several instances in which he was denied general assistance in preparing his defense; Pittman never suggests that he requested certain documents or witnesses that were denied to him. In fact, the disciplinary report given to Pittman on February 1, 2005, explained that he was entitled to present physical evidence at his hearing or request that an investigator interview witnesses on his behalf. Ex. A. The form also contained space for Pittman to list specific witness requests and directed Pittman to return such requests to the adjustment committee. *Id*. Pittman simply did not avail himself of the procedure by which he could call witnesses or collect material evidence for his defense. For this reason, the Court finds that Petitioner was afforded the right to present evidence and call witnesses at his disciplinary proceeding in accordance with his due process rights.

### d. Written statement of decision

Next, Petitioner contends that the adjustment committee's written statement of its recommendation of sanctions was inadequate because it failed to explain why his requests for witnesses were denied and did not mention the fact that Petitioner had given an oral statement at his hearing. The Court notes first that due process only requires that the adjustment committee provide "a written statement * * * as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S at 563. The Supreme Court did not elaborate on the detail required by such reports; however, the primary purpose of the requirement was to provide prisoners with a reviewable record that they might reference on appeal. See *Hensley v. Wilson*, 850 F.2d 269, 273 (6th Cir. 1998) (discussing the standard articulated in *Wolff*). In other words, the requirement of a written statement was intended to afford prisoners the opportunity to show, on appeal, that the evidence against them did not justify the sanctions imposed.

Nonetheless, this Court cannot conclude that the written statement provided by Petitioner's adjustment committee was constitutionally deficient. First, the committee had no reason to state that it had denied Petitioner's request for witnesses because, as explained above, it is not clear that Petitioner ever filed such a request using the proscribed method. And even if the committee had received (and rejected) such a request, the committee would not be obligated to include that fact in its written statement. See *Ponte v. Real*, 471 U.S. 491, 497 (1985) ("[P]rison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but [] they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, *or by presenting testimony in court* if the deprivation of a 'liberty' interest is challenged because of that claimed defect in the hearing.") (emphasis added). This comports with the Supreme Court's language in *Wolff*, which never suggested that the disciplinary body had to provide an exhaustive record of every procedural decision that it made. See 418 U.S. at 564-65.

The fact that Petitioner's oral testimony was not described in detail also does not reflect a constitutional deficiency; rather, it reflects the administrative committee's choice to place weight on other evidence such as the testimony of inmate Shields and the investigation by Lt. Thompson. See Ex. B. Accordingly, the Court rejects Petitioner's claim that he did not receive an adequate written statement of the evidence and reasons behind his disciplinary sanctions.

e. Decision not supported by facts

Petitioner's final due process claim is that the evidence heard by the adjustment committee was insufficient to justify its findings and recommendation of sanctions. The requirements of due process are satisfied as long as "there was some evidence from which the conclusion of the administrative [committee] could be deduced * * * * [citation omitted].

Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455-56. The adjustment committee's final summary report meets this standard because it provided significantly more than "some" evidence that Petitioner was guilty of violating each of the four DOC rules. The report mentions that Pittman was observed charging inmates for legal work, that inmate Shields had corroborated this claim in his interview, and that Shields' girlfriend had sent money sent to Petitioner. Ex. B. The report also indicates that Pittman refused to cooperate with the investigation into these activities. *Id*. This evidence was more than sufficient to satisfy the final due process requirement that a prisoner's sanctions be based on *some* evidence.

### 2. *Equal protection claim*

Petitioner, who is black, also asserts that his disciplinary hearing violated his constitutional right to equal protection because his sentence was longer than two non-black inmates who also were charged with violating Rule 110 (Impeding or Interfering with an Investigation). Petitioner's equal protection claim is deficient for two reasons. First, to prove an equal protection violation, Petitioner must show that the state action that he challenges resulted in the disparate treatment of similarly situated defendants (*City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985)); however, the other inmates described in Petitioner's claim were not similarly situated to Petitioner because they committed fewer offenses. Furthermore, even if Petitioner were similarly situated to these individuals, his claim would fail on separate grounds because Petitioner also fails to prove that the alleged disparate impact was the product of intentional discrimination. See *McCleskey v. Kemp*, 481 U.S. 279, 293-94 (1987) (noting that

the Supreme Court only rarely accepts statistical studies as evidence of intent to discriminate and that in those cases where it did, the statistical evidence was overwhelming).[14]

        *3.      Inadequate representation claim*

Petitioner's remaining claims allege constitutionally ineffective assistance of trial counsel; however, there is no constitutional right to representation in a mandamus case. See *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) ("due process does not require appointment of counsel for indigent prisoners pursuing state postconviction remedies or federal habeas relief."); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995) (noting that "[c]ivil litigants do not have a right, either constitutional or statutory, to counsel" and refusing to recognize a rule of "automatic appointment of counsel whenever a litigant alleges a violation of due process"); see also *Marrero v. Peters*, 229 Ill. App. 3d 752, 755 (Ill. App. 1992) ("[M]andamus is a civil action in which there is no constitutional right to counsel."). Because habeas relief is available only to challenge a petitioner's custody on constitutional grounds, Petitioner's inadequate representation claim also must fail.

## V.    Conclusion

For the reasons stated above, Pittman's petition for writ of habeas corpus [1] is respectfully denied.

Dated: August 2, 2010                                                        _____
                                                                                Robert M. Dow, Jr.
                                                                                United States District Judge

---

[14] Petitioner's equal protection claim also may be barred on exhaustion grounds. The claim was included in his original complaint, which was dismissed without prejudice, but not the amended complaint that he subsequently filed with the Illinois Circuit Court.